Richardson J.
delivered the opinion of the Court.
This is a question between the creditors of J. Ford and D. Aiken, the creditor of David Elkin. The rights of D. Aiken depend upon the legal merits of this proposition, and that those particular negroes of J. Ford were liable for the debt of Elkin to him. Aiken’s proper complaint is, that he, a subsequent creditor of D. Elkin, was lured into a confidence, and trusted Elkin through his apparent right and property in the negroes. So that, as to him, it matters not whether Elkin was the vcal, or only the ostensible owner. His charge is, that the plaintiff permitted his son-in-law, Elkin, to pass for the owner: that is enough. The reply to this proposition denies that D. Aiken was a subsequent creditor, or had trusted Elkin on account of those negroes, and would make the case turn upon the question, whether Ford originally gave the negroes to Elkin, or only hired or lent them. But upon this particular head, at least since the verdict, it cannot be necessary to hesitate.
It has been put beyond controversy, that J. Ford never transferred his right and ownership of the negroes to Elkin. He did no more than deliver the negroes into the possession of Elkin, subject to the payment of a small sum of money, if ever demanded, Elkin paying the taxes and clothing them. Ford had a legal right to do this, and still remain the lawful owner. He put the staff into the hands of another, retaining his right to resume it. But the actual possession of the negroes by Elkin gave rise to his apparent ownership, and may have induced Aiken to trust and confide in the pecuniary responsibility of Elkin, as the true and legal owner. Did such false colors decoy Aiken to trust to an apparent sterling fund, and shall he find it a delusive bubble ? This brings us to the proper questions *99 of ihe case. They aro tlie same as those decided by ibis Court in the case of Archer v. M’Fall, (Rice R., 73,) and before that case had. been carried into a general rule of law, namely: “that, if one man put his property into the hands and possession of another—not his mere agent—in such a way as to enable him to appear as the real owner; and the beneficiary, by reason of such, apparent ownership, get credit with a third person, a stranger to the true legal right and title, and trusting him in the confidence that he really owns such property, such property does, in virtue of this rule of law, become liable for the debt, so contracted, just as it would have been liable, in case such debtor had been the true owner.” This rule was introduced to prevent fraud upon strangers to the true right and title, it is to prevent fraud, but must not protect opposite fraud. It supposes, necessarily, a legal or technical fraud, arising out of the confident belief that the apparent is the true title, although no moral or intended fraud was committed by such debtor on the true owner. The principle is this—you shall not raise a deceptive confidence, and mock it. In such transfers of possession, even though intended as acts of beneficence, the owner must be careful that he does not give a species of practical letter of credit, to the extent of the property: he is not allowed to furnish the means of credit, and have that very means irresponsible lor the credit so obtained. This is the principle decided in Archer v. M’Fall. In that case the verdict went for Cherry, the creditor of Van Lawhon; Van Lawhon stood, as now stands Elkin. But I cannot perceive that, if it had passed for Archer, who stood as now stands John Ford» the present plaintiff, that this Court would have set it aside. In that case it was evident that Archer never gave the negro to Van Lawhon ; but the jury made her liable for his debt to Cherry, a subsequent creditor, because Cherry had been entrapped to credit Van Lawhon. In the present case, it is very clear that Ford did not give the negroes to Elkin; and the jury have found against his supposed subsequent creditor Aiken. By the verdict, they have negatived, either the assumption that Aiken was the subsequent creditor of Elkin, or else, if he was a subsequent creditor, they have denied that he gave the *100 credit to Elkin, relying upon these negroes being his property. The latter is entirely a question of fact, upon the knowledge! mind and reliance of Mr. Aiken, which can be no more than inferred, and the jury constituted the proper legal tribunal to decide it. Upon the question, whether Aiken credited Elkin for the debt claimed after the 1st January, 1830, when Ford delivered the negroes to Elkin, so as to make him a subsequent creditor: or had before that time, at the formation of the partnership in 1828, given him the credit, out of which, and without any new credit a balance was struck, may admit of two opinions. My understanding of a subsequent creditor supposes, that in the original transaction, the party allowing the credit, relied upon the property in possession as the fund, out of which the debt might be paid; and that any possession subsequently acquired could not form a part of such reliance. For illustration, take Archer’s case. After the delivery of the negroes to Van Lawhon, Cherry sold his claims in the firm to Van Lawhon. This was entirely an original credit, and Cherry had a right and relied upon the entire visible estate of Van Lawhon; and Archer’s negroes formed a part. But if the former firm of Cherry & Van Lawhon had merely continued, and been wound up after the possession of the negroes by Van Lawhon, with a balance against him, this would not have made Cherry a subsequent creditor, with the peculiar rights attached by the rule in question. Archer’s property could not have been taken, simply because the negroes had increased the confidence of Cherry that his former credit would be paid. We could not make such stops in order to form a peculiar and new liability, extending the rule, and further encroaching upon Archer’s right in the negroes. Now then, I ask, if Aiken’s position and defence be not the very one in which Cherry is placed, in the foregoing change supposed in the case of Archer and M’Fall? We certainly would not apply the rule to an old bond or note on which there had been successive settlements, or substitutions of new bonds or renewals. We would go back to the original foundation and time of credit, in order to apply the rule, which renders liable the property of a third person, only in case of an original credit being bottomed upon *101 it; and even that risk, in part upon the supposed negligence of the true owner, in contributing a possession which has enticed, though involuntarily, a new credit and creditor for the mere occupant of the property. In Archer’s case, the rule was made to attach to a possession allowed to Van Lawhon, from moral duty and parental love; and hence, perhaps, some criticism—but I think unjustly applied. But if we pass still onward, and apply the rule in favor of debts of doubtful beginning—and herein the burthen is necessarily laid upon the creditor—we may indeed strain the rule to an extravagant application, and render it irrational and odious. Upon the merits of the present case, therefore, my judgment is, that any other verdict than the present would have had little else to rest upon than vague generalities.
But on the other side, J. Ford’s claims have the full merits of Archer’s, and were proved to absolute certainty. And to counteract this, we have on the part of the defendant a reliance on these negroes, somewhat questionable, and a debt by no means certainly subsequent to the possession of Elkin, though there may have been an increased confidence in Elkin. How else, then, could any other verdict, but for the undoubted owner, Ford, be rendered.
In the additional ground to that on the merits, the Court can perceive no claim for a new trial.
The motion is therefore dismissed.
Evans J., Butler J., and Frost J., concurred.